1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REGINA BRONNER, a Washington State citizen, | ) ) ) |
| Plaintiff, | ) **NO.** ) ) **COMPLAINT** ) |
| v. | ) **JURY DEMAND** ) |
| VOCATIONAL TRAINING INSTITUTE, INC., d/b/a PIMA MEDICAL INSTITUTE, an Arizona corporation, | ) ) ) ) |
| Defendant. | ) ) ) |

COMES NOW Plaintiff Regina Bronner ("Plaintiff"), by and through her attorneys, Corr Downs PLLC, and hereby states and alleges as follows:

## I. **PARTIES**

1.      Plaintiff was, at all times material hereto, and is a resident of King County, Washington.

2.      Defendant Vocational Training Institute, Inc. ("Pima") is an Arizona corporation doing business as a medical career training school in Seattle, King County, Washington.

## II. **JURISDICTION AND VENUE**

3.      Jurisdiction is proper based on both federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

COMPLAINT- 1
No.

4.      Venue is proper within this district pursuant to 28 U.S.C. §1391(b)(2).

### III. FACTS

5.      Ms. Bronner first enrolled in Pima's Seattle program in September 2013.

6.      Approximately two months later, Ms. Bronner was involved in a motor vehicle accident that resulted in serious injuries to her hip. Ms. Bronner's injuries from the accident were so severe that she was forced to withdraw from Pima.

7.      Although still suffering from injuries caused by the car accident, Ms. Bronner re-enrolled with Pima in Fall 2014 with the intention of securing an internship closer to home than her previous internship at the U.S. Navy Hospital in Bremerton, Washington.

8.      In early Fall 2014, Ms. Bronner met with Andrew Shepard to discuss clinical assignments for the following semester. Ms. Bronner explained she needed the accommodation of an assignment close to her home due to her hip injury and the fact that she was a caregiver for her elderly mother. On information and belief, Pima had accommodated other students who required assignment accommodations due to similar family medical issues.

9.      In response, Mr. Shepard told Ms. Bronner that if she could not go back to the U.S. Navy Hospital then she should just leave the program immediately and that he could help her with the disenrollment paperwork right away.

10.     In October 2014, Ms. Bronner underwent hip replacement surgery. During this time, she took very little time off from school and kept up her studies because Pima would have counted any absences against her.

11.     On December 1, 2014, Ms. Bronner met with Arlondo Stephenson about clinic placement for the following semester. Ms. Bronner again asked for the accommodation of a nearby placement because of her lingering mobility issues and family caregiver issues. Ms. Bronner's request was denied.

12.     Instead, Ms. Bronner was assigned to the VA Hospital in Portland, Oregon.

COMPLAINT- 2
No.

Corr|Downs PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962-5040

13.     Given the significant distance between her home in Seattle, Washington and the VA Hospital in Portland, Oregon, Ms. Bronner was forced to relocate to Portland four days out of the week and return to Seattle for classes each Monday.

14.     Despite the plain language in Pima's student handbook and registration agreement, Pima failed to accommodate Ms. Bronner's disability during her clinical assignments.

15.     Once Pima assigned Ms. Bronner to the VA Hospital in Portland, it never provided any accommodation. Rather, Ms. Bronner faced discrimination and retaliation because of her disability.

16.     In addition, at least three VA Hospital employees harassed Ms. Bronner. These individuals all stated to Ms. Bronner she should not be in the internship program due to her disability, then they refused to supervise Ms. Bronner's patient procedures, and refused her request for time off when she was extremely ill.  Another VA Hospital radiology department employee informed Ms. Bronner that three employees were conspiring to kick Ms. Bronner out of the program.

17.     Indeed, Ms. Bronner was forced to work while dehydrated and suffering from a high fever on March 18, 2015.  Later that same evening, Ms. Bronner fell in the shower, re-injuring her hip, and was rushed to the Emergency Department.  After a successful procedure to re-set the hip, Ms. Bronner was cleared to return to work and school the following week. Pima was aware of all this and, despite its responsibilities and legal obligations, it did nothing to assist or accommodate Ms. Bronner.

18.     The following Monday, March 23, 2015, Ms. Bronner was called into a meeting by clinical liaison Heather Johnson with Pima instructors where she was questioned for over an hour on her medical condition – the original injury and the more recent incident. After this meeting and despite letters of clearance to resume activities, she was told to wait in Seattle rather than returning to Portland while Pima decided how to proceed.

COMPLAINT- 3
No.

CORR|DOWNS PLLC
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962-5040

19.     On March 25, 2015, Pima terminated Ms. Bronner from the program stating that the VA Hospital did not want her there.  On information and belief, Pima's stated reason was false and pretextual.

20.     The same day, Ms. Bronner initiated a complaint with the Department of Education's Office of Civil Rights ("OCR").

21.     Eventually, through an Early Complaint Resolution Agreement dated August 4, 2015 ("the Agreement"), Pima reinstated Ms. Bronner in Fall 2015.

22.     The Agreement contained a term that stated: "Companies agree that there will be no retaliation of any kind."

23.     Consistent with discussions during the OCR complaint process about assigning Ms. Bronner to an internship location closer to her home in North Seattle, Pima assigned Ms. Bronner to a clinical internship at Overlake Hospital in Bellevue and Issaquah.

24.     Heather Johnson, who had been the clinical liaison with VA Hospital in Portland, was assigned as the Overlake Hospital clinical liaison.

25.      Not long into Ms. Bronner's assignment, two fellow students along with some of the Overlake's radiology staff, began engaging in sexually harassing conduct.

26.     Pima staff, including Arlondo Stephenson and Heather Johnson, forced Ms. Bronner to have regular meetings with them where she was harassed with false accusations. Other students did not have this same meeting requirement.

27.     During Fall 2015, Ms. Bronner reported the sexual harassment at Overlake to Mr. Stephenson and Alan Clay.  Mr. Stephenson and Mr. Clay asked Ms. Bronner to document the incidents in detail in an email.

28.     When Ms. Bronner did as Pima's managers demanded, Pima then retaliated against Ms. Bronner by moving her from Overlake to the U.S. Navy Hospital in Bremerton. Due to the distance of the U.S. Navy Hospital from her home, Ms. Bronner believed that this move was retaliatory.

COMPLAINT- 4
No.

**Corr|Downs PLLC**
100 WEST HARRISON STREET
SUITE N440
SEATTLE, WA 98119
206.962-5040

29.     When Ms. Bronner inquired about what would be done about the two male Pima students involved in the sexually harassing conduct, Mr. Clay reassured her they had been "taken care of."  But nothing was done to them. Indeed, they both remained in the clinical program at Overlake.

30.     In another OCR investigation initiated by different Pima student, the OCR concluded in a January 24, 2014 investigation report that Pima "had not adopted procedures for responding to complaints of discrimination and did not respond adequately to such a complaint raised by the complainant," in violation of federal anti-discrimination law.

31.     Pima's mid-semester transfer of Ms. Bronner from Overlake to Bremerton in November 2015 required Ms. Bronner to enter training that was already well underway.  In fact, Ms. Bronner had to wait two weeks for security clearance authorization to work at the U.S. Navy Hospital.

32.     During the first two weeks she was on site at the U.S. Navy Hospital, Ms. Bronner was only allowed to observe, which caused her to lose out on crucial training time as the semester's end approached.

33.     In mid-December, Arlando Stephenson, who recently became the clinical liaison to the U.S. Navy Hospital after Pima transferred Ms. Bronner there, informed Ms. Bronner her performance was not up to par.  Notably, she only had a few weeks of onsite training whereas her classmates had three months of training.

34.     On or about January 21, 2016, Pima terminated Ms. Bronner from the program for a second time. She immediately re-opened her complaint with OCR alleging, *inter alia*, that Pima engaged in unlawful retaliation.

35.     On October 7, 2016, the OCR issued investigation findings stating Pima had engaged in retaliation by transferring Ms. Bronner from Overlake to the U.S. Navy Hospital in Bremerton after she complained about sexual harassment.  The OCR also required that Pima staff undergo anti-harassment training.

COMPLAINT- 5
No.

# IV.  CLAIMS

## RETALIATION UNDER THE WASHINGTON LAW AGAINST DISCRIMINATION

36.     Ms. Bronner re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

37.     While assigned to Overlake Hospital, Ms. Bronner was subjected to unwanted and unlawful sexual harassment by Pima's students and third-parties with which Pima has a contractual business relationship.

38.     Ms. Bronner complained about the harassment to Pima's managers.

39.     In response, Pima unlawfully retaliated against Ms. Bronner in violation of the RCW 49.60.010, *et seq.,* by reassigning her to a clinical internship at the U.S. Navy Hospital in Bremerton, which was much farther from her home.  This retaliatory reassignment increased the duration and cost of her commute and forced her to join a new clinical internship mid-stream. Pima then terminated Ms. Bronner from its program shortly thereafter.  Not only did the change in clinical assignment location during the middle of the semester cause Ms. Bronner direct economic harm in terms of increased transportation expenses, but it also set her up for failure as clinical student.

40.     As a direct, foreseeable, and proximate result of Pima's unlawful retaliation against Ms. Bronner for complaining about harassment, Ms. Bronner has suffered and continues to suffer past and future economic and non-economic damages in amounts to be proven at trial.

## RETALIATION UNDER TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

41.     Ms. Bronner re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

42.     Pima operates an education program receiving Federal financial assistance.

43.     While assigned to Overlake Hospital, Ms. Bronner was subjected to unwanted and unlawful sexual harassment by Pima's students and third-parties with which Pima has a contractual business relationship.

COMPLAINT- 6
No.

44.     Ms. Bronner complained about the harassment to Pima's managers.

45.     In response, Pima retaliated against Ms. Bronner in violation of Title IX, 20 U.S.C. §1681, by reassigning her to a clinical internship at the U.S. Navy Hospital in Bremerton, which was much farther from her home.  This retaliatory reassignment increased the duration and cost of her commute and forced her to join a new clinical internship mid-stream. Pima then terminated Ms. Bronner from its program shortly thereafter.  Not only did the change in clinical assignment location during the middle of the semester cause Ms. Bronner direct economic harm in terms of increased transportation expenses, but it also set her up for failure as clinical student.

46.     As a direct, foreseeable, and proximate result of Pima's unlawful retaliation against Ms. Bronner for complaining about harassment, Ms. Bronner has suffered and continues to suffer past and future economic and non-economic damages in amounts to be proven at trial.

## VIOLATION OF CONSUMER PROTECTION ACT

47.     Ms. Bronner re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

48.     Pima is engaged in commerce in the State of Washington and, therefore, subject to Washington's Consumer Protection Act (CPA), RCW 19.86.010, *et seq.*

49.     Pima violated the CPA by committing unfair or deceptive practices with respect to Ms. Bronner, as described above.

50.     As a direct, foreseeable, and proximate result of Pima's unlawful practices, Ms. Bronner has suffered and continues to suffer past and future economic and non-economic damages in amounts to be proven at trial.

## BREACH OF CONTRACT

51.     Ms. Bronner re-alleges and incorporates herein all preceding paragraphs in this Complaint as though set forth in full herein.

COMPLAINT- 7
No.

52.     The parties entered into a Settlement Agreement and General Release dated August 4, 2015.

53.     In the Agreement, Pima agreed that there would "be no retaliation of any kind" against Ms. Bronner.

54.     As described above, Pima subsequently breached the Agreement by retaliating against Ms. Bronner.  Specifically, Pima retaliated against Ms. Bronner by reassigning her from Overlake to the U.S. Navy Hospital and then terminating her from the Pima program.

55.     As a direct, foreseeable, and proximate result of Pima's unlawful breach of contract, Ms. Bronner has suffered and continues to suffer past and future expectation, incidental, and consequential damages in amounts to be proven at trial.

## V.  **PRAYER FOR RELIEF**

WHEREFORE, Ms. Bronner respectfully requests the following relief:

1.     That the Court award Ms. Bronner economic damages including, but not limited to, compensatory, incidental, and consequential damages in amounts to be determined at trial;

2.     That the Court award Ms. Bronner non-economic damages, including but not limited to, past and future mental and emotional distress, pain and suffering, and loss of enjoyment of life resulting from Pima's unlawful practices in an amount to be established at trial;

3.     That the Court award Ms. Bronner attorneys' fees and costs pursuant to Title IX, the WLAD, the CPA, and other applicable law;

4.     That the Court award Ms. Bronner pre- and post-judgment interest as well as a gross up for negative tax implications;

5.     That the Court award Ms. Bronner treble damages under the CPA;

6.     That the Court award Ms. Bronner punitive damages under Title IX and other applicable law;

7.     That the Court award such other relief as the court deems appropriate.

COMPLAINT- 8
No.

1    DATED:  June 6, 2017

2                                           CORR|DOWNS PLLC

3

4                                           By /s/ Jacob M. Downs

5                                               Jacob M. Downs, WSBA No. 37982
                                                jdowns@corrdowns.com
6                                               100 W. Harrison. St.
                                                N440
7                                               Seattle, WA 98119
                                                Telephone: 206.962.5041

8

9                                           By /s/ Joseph P. Corr

10                                              Joseph P. Corr, WSBA No. 37982
                                                jcorr@corrdowns.com
11                                              100 W. Harrison. St.
                                                N440
12                                              Seattle, WA 98119
                                                Telephone: 206.962.5042

13                                          Attorneys for Plaintiff Regina Bronner

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COMPLAINT- 9
No.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a jury trial.

DATED:  June 6, 2017

CORR|DOWNS PLLC


By */s/ Jacob M. Downs*
Jacob M. Downs, WSBA No. 37982
jdowns@corrdowns.com
100 W. Harrison. St. N440
Seattle, WA 98119
Telephone: 206.962.5041


By */s/ Joseph P. Corr*
Joseph P. Corr, WSBA No. 37982
jcorr@corrdowns.com
100 W. Harrison. St. N440
Seattle, WA 98119
Telephone: 206.962.5042
Attorneys for Plaintiff Regina Bronner

COMPLAINT- 10
No.